UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 17-CR-222

DEVIN JEFFERSON,

        Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Laura S. Kwaterski, Assistant United States Attorney, and the defendant, Devin Jefferson, individually and by attorney Robert J Penegor, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a four-count indictment, which alleges violations of Title 18, United States Code, Sections 1951(a) and 2.

3.     The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT TWO
**THE GRAND JURY FURTHER CHARGES:**
1. At all times material to this Indictment, the Walgreens store located at 4730 South 27th Street, in Milwaukee, Wisconsin, was engaged in the purchase and sale of articles and commodities in interstate commerce.
2. On or about March 8, 2017, in the State and Eastern District of Wisconsin,

**DEVIN JEFFERSON,**

did unlawfully obstruct, delay, and affect commerce by robbery, in that the defendants did unlawfully take and obtain U.S. Currency and goods belonging to Walgreens from and in the presence of an employee of the Walgreens store against his will by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT THREE
**THE GRAND JURY FURTHER CHARGES:**
1. At all times material to this Indictment, the Walgreens located at 3701 South Howell Avenue in Milwaukee, Wisconsin, was engaged in the purchase and sale of articles and commodities in interstate commerce.
2. On or about March 10, 2017, in the State and Eastern District of Wisconsin,

**DEVIN JEFFERSON,**

did unlawfully obstruct, delay, and affect commerce by robbery, in that the defendants did unlawfully take and obtain U.S. Currency and goods belonging to Walgreens from and in the presence of an employee of the Walgreens store against his will by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT FOUR
**THE GRAND JURY FURTHER CHARGES:**
1. At all times material to this Indictment, the Walgreens located at N83 W15701 Appleton Avenue, in Menomonee Falls, Wisconsin, was engaged in the purchase and sale of articles and commodities in interstate commerce.
2. On or about March 10, 2017, in the State and Eastern District of Wisconsin,

**DEVIN JEFFERSON,**

did unlawfully obstruct, delay, and affect commerce by robbery, in that the defendants did unlawfully take and obtain U.S. Currency and goods belonging to Walgreens from and in the presence of an employee of the Walgreens store against his will by means of actual and threatened force, violence, and fear of injury to his person.

In violation of Title 18, United States Code, Sections 1951(a) and 2.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum term of imprisonment and fine: a maximum of 20 years and $250,000. Each count also carries a mandatory special assessment of $100 and up to three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 30 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNT

8. The government agrees to move to dismiss the remaining count of the superseding indictment at the time of sentencing.

3

Case 2:17-cr-00222-PP   Filed 10/23/18   Page 3 of 20   Document 42

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of armed Hobbs Act robbery as set forth in Counts Two, Three, and Four, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant or his co-actor knowingly obtained or attempted to obtain money or property from or in the presence of a person;
> Second, the defendant or his co-actor did so by means of robbery;
> Third, the defendant or his co-actor believed that the person parted with the money or property because of the robbery; and
> Fourth, the robbery affected interstate commerce.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information

4

regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses charged in Counts Two, Three, and Four are 20 under Sentencing Guidelines Manual § 2B3.1(a).

### Base Offense Level

17. The parties agree to recommend to the sentencing court that a one-level increase under Sentencing Guidelines Manual § 2B3.1(b)(6) is applicable to the offense level for the offenses charged in Counts Two, Three, and Four because controlled substances were taken in each of these armed robberies.

### Weapons

18. The parties acknowledge and understand that the government will recommend to the sentencing court that a 6-level increase under Sentencing Guidelines Manual § 2B3.1(b)(2)(B) is applicable to the offense level for the offenses charged in Counts Two and Four because the offenses involved the pointing of a firearm directly at a victim and a 5-level increase under § 2B3.1(b)(2)(C) is applicable to the offense level for the offense charged in Count Three because a firearm was possessed.

### Physical Restraint

19. The parties acknowledge and understand that the government will recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 2B3.1(b)(4)(B) is applicable to the offense level for the offenses charged in Counts Two and Four because the defendant physically restrained victims to facilitate the commission of the offenses as the armed robbers moved the victims at gunpoint to the safe.

### Multiple Counts

20. The parties acknowledge and understand that the government will recommend to the sentencing court that 28 is the highest offense level and a 3-level

increase for the multiple counts involved under Sentencing Guidelines Manual § 3D1.4 is applicable to determine the combined offense level of 31 for the offenses charged in Counts Two, Three, and Four.

## Acceptance of Responsibility

21. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

22. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine

to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

24. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

25. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

26. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

27. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of

the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

### Fine

28. The parties agree to recommend that no fine be imposed.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $300 prior to or at the time of sentencing.

### Restitution

30. The defendant agrees to pay restitution as ordered by the court. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

10

Case 2:17-cr-00222-PP   Filed 10/23/18   Page 10 of 20   Document 42

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations, venue, etc.

### Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this

11
Case 2:17-cr-00222-PP   Filed 10/23/18   Page 11 of 20   Document 42

agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

12

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10-23-18

DEVIN JEFFERSON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 10-23-18

ROBERT J PENEGOR
Attorney for Defendant

For the United States of America:

Date: 10/23/18

MATTHEW D. KRUEGER
United States Attorney

Date: 10/23/2018

LAURA S. KWATERSKI
Assistant United States Attorney

14

## Attachment A

*Armed Robbery of Walgreens on South 27th Street*: On March 8, 2017, at approximately 9:25 p.m., three black males, two of which were armed with handguns, robbed the Walgreens located at 4730 S. 27th St., Milwaukee, WI. Two of the armed robbers jumped the pharmacy counter, handed the pharmacist a demand note, and stole several bottles of various narcotics. The third robber acted as a lookout. The victim pharmacist stated that that each robber had a handgun and was carrying a red duffle bag. She stated that they were whispering and telling her to be quiet and shut up. She stated that the first robber was holding a black semi-automatic handgun in his right hand and that he told her to "Put it in the bag," and held out a bag for her to grab. She stated that she was working with 30 mg Oxycodone tablets and 30 mg Morphine tablets when the armed robbers jumped the pharmacy counter and that she had a 100 tablet sealed bottle of Oxycodone and a half bottle of Oxycodone with an unknown number of tablets in it. She stated that the first robber told her to go to the safe where the drugs were, and she told the first robber that she couldn't get into the safe because it was locked and on a three minute timer. The robber then asked for the Tussionex and she placed one full bottle (1 pint) and another partially full bottle of Tussionex into the red duffel bag. She stated that the second robber was armed with a black semi-automatic handgun and was talking on a cell phone during the robbery. She stated that the armed robbers then jumped back over the counter and into the store. She stated that the suspects left a demand note behind that listed the names of the medications that the robbers were looking for, which read: "ROBBERY: All Bottles of Oxycodone 30 mg, 20 mg, 15 mg, 10 mg, 5 mg, Zanax, Perocosets, Vicodin, All Bottles of Tussionex – Hydrocodone Politrex Chlophrine, Hi-tech – Promethozine Codien Phosphate, Actavist – Promethazine Codien Phosphate, 30 sec or Will Shoot TRY ME."

The victim pharmacist also stated that there was a suspicious customer in the store about an hour before the robbery. The victim pharmacist assistant described that the two armed robbers jumped over the counter and that the armed robbers were pointing the guns at she and the pharmacist. She stated that one of the armed robbers went to her and the other went to the pharmacist. She stated that the armed robber went up to her and stated, "Don't do anything stupid," while pointing the gun at her and that he handed her a note. She stated that she did not read the note, and that the armed robber began demanding Xanax. She stated that she proceeded to take the armed robber to the Xanax and proceeded to put some of the bottles in the armed robber's bag. She stated that the armed robber directed her back to the safe, at gunpoint, and when they got back to the safe, the safe was locked and that the armed robber proceeded to demand "lean," and "Oxys." She then asked if the armed robber wanted generic and he said he did and she gave him Alprazolam and Zolpidem. She stated that the armed robber then got a phone call and that he answered the phone and when he got off the phone, he yelled to the other armed robber, "let's go," and they proceeded to jump over the counter and left.

The manager working at the time described interacting with a suspicious individual who came into the store looking around and who purchased stomach medication approximately 45 minutes to an hour before the robbery occurred. The manager stated that about a minute prior to the armed robbery occurring, she remembered seeing the same suspicious individual again in an aisle and that he stated that he got the wrong medication, but at the time he was looking at the vitamins, which struck her as odd. She stated she observed another suspicious individual and that when she went back to the pharmacy area, that individual was now robbing the pharmacy employees. She stated that she made eye contact with the suspect again but continued to walk away toward aisle one where she encountered an employee and asked the employee to call 911. She stated that she remained in aisle one and tried to remain unnoticed and quiet. She stated approximately one minute later she observed the robber running quickly past her and toward the front of the store. Because she believed he was the only robber, she took a few steps and then a second robber came running from the second aisle and ran into her causing him to fall to the floor and drop his red bag which was full of drugs. She stated that the second robber was armed with a handgun.

*Armed Robbery of Walgreens on South Howell Avenue*: On March 10, 2017, at approximately 1:10 a.m., one black male armed with a black semiautomatic handgun robbed the Walgreens located at 3701 S. Howell Ave., Milwaukee, WI. The victim pharmacist stated that he had his back turned and when he turned around he observed an unknown black male standing right behind him. He stated that he never even heard the armed robber jump over the pharmacy counter. The victim pharmacist stated that he was startled and let out a yelp and that the armed robber told him to be quiet and then asked him to open the drug safe. The armed robber demanded that the pharmacist open the safe that contained Percocets and Tussionex. The victim pharmacist stated that the armed robber was holding a black semi-automatic handgun in his hand and holding it down by his side. The victim pharmacist stated that he told the armed robber that the Percocets and the Tussionex were in the drug safe with a time delay lock and he showed the armed robber that he could not open the safe and explained how the safe worked. The victim pharmacist then told the armed robber that he had some Percocets and Tussionex on the counter and due to the time delay on the safe, the armed robber instead stole various bottles of narcotics that were on the counter. The armed robber then ordered the pharmacist to open the cash register, and he stole $70 from the cash drawer. The armed robber then returned back to the safe and reached out and tried to open the safe again and when the safe didn't open, the armed robber paced back and forth, and then climbed back over the counter and walked out of the store.

*Armed Robbery of Walgreens on Appleton Avenue*: On March 10, 2017, at approximately 11:35 p.m., two black males, one of which was armed with a handgun, robbed the Walgreens located at N83 W15701 Appleton Ave, Menomonee Falls, WI. One of the armed robbers jumped over the pharmacy counter and pointed a black handgun directly at the pharmacist. The pharmacist stated that the first suspect jumped over the

16

counter and landed next to him. The first robber had a gun in his hand and told him to give him the "Percs" and the "Oxys." The victim pharmacist stated that he understood that the armed robber wanted narcotic pills, specifically Percocets and Oxycodone and at gunpoint, walked over to the safes were the pharmacy keeps the narcotic pills. The victim pharmacist advised the first suspect that the safe with the Oxycodone pills was a time-delay safe and offered some pills in the safe to the left of the timed safe, which were "dummy bottles," with a small amount of Percocet in them. The victim pharmacist explained these bottles are there in the case of a robbery so the robbers may take them and leave; however, the robber did not simply take the "dummy bottles," and leave. The victim pharmacist stated after he started the unlock process of that safe, he also unlocked other cabinets that were not on time-delay and filled the armed suspect's bag with "dummy bottles."

Then a second robber jumped over the pharmacy counter, and the robbers ordered the pharmacist to open the safe. The second robber was not observed with a firearm. The victim pharmacist stated that the second robber was very aggressive, and at one point, the second robber reached into the victim's front left pants pocket while he was being held at gunpoint, and pulled out the victim pharmacist's wallet. The victim pharmacist stated that the second robber then stated, "I got your family now, so don't do anything stupid." The victim pharmacist stated that while waiting for the three-minute timer on the safe, he was held at gunpoint, and after the timer clicked and the safe was opened, the robbers obtained various bottles of narcotics from the safe and then fled the store. The victim pharmacist stated that both robbers filled their bags with the opiates and completely emptied the entire cabinet. After the robbers filled their bags with the pill bottles, they told the victim pharmacist to lie on his stomach and not to move for ten minutes. Later, the victim pharmacist determined that the stolen prescription pills have an estimated value of approximately $19,638.

At all relevant times, the three aforementioned Walgreens were engaged in the sale of articles and commodities in interstate commerce. None of the robbers in the three above-described armed pharmacy robberies wore masks or had their faces covered. Review of the surveillance footage of the robbers casing and/or robbing the Walgreens pharmacies reveals that the same group of individuals were involved in all three of the above-described armed robberies.

*Identification of Getaway Vehicle and Co-Conspirator Julius Finch*: Review of surveillance footage from the armed robbery of the Walgreens located at 3701 S. Howell Avenue on March 10, 2017 also revealed a getaway vehicle (black Chevrolet conversion van) used by the armed robbers. The black Chevrolet conversion van had white decals down the sides of the van. The van also had a mismatched driver rear rim. Law enforcement was able to identify the last three digits on the license plate as "290." According to the Indiana Bureau of Motor Vehicles, a black 2004 Chevrolet Express 1500 with Indiana license plate number XGV-290 is registered to Shirley Finch in Indianapolis,

Indiana. Julius Finch is the son of Shirley Finch. On March 7, 2017, at approximately 11:19 p.m., Julius Finch checked into the Motel 6 located at 1201 W College Ave, Oak Creek, WI. Julius Finch checked out of the Motel 6 sometime the morning of March 8, 2017. Finch provided his Indiana driver's license at the time of check in and his driver's license was photocopied by Motel 6 staff. The driver's license and check-in documents at the Motel 6 reveal that Finch used the address of 4601 Guilford, Indianapolis, IN, 46205.

During a review of the Motel 6 surveillance video on March 8, 2017, Julius Finch and three other black males, two of which were subsequently identified as Devin Jefferson and Tracy Hollowell, were observed entering a black Chevrolet van with white decals down the sides of the van and a mismatched driver's side rear rim, that was later used as the getaway vehicle in the Howell Avenue robbery.

A person who wishes to remain anonymous and is familiar with Shirley and Julius Finch was shown photographs of the black Chevrolet van observed in the Motel 6 surveillance footage. The person confirmed that the van belonged to Shirley Finch. The person was shown a photograph of Julius Finch and confirmed that Julius Finch was Shirley's son, and that Julius lived with his mother. The person also told law enforcement that the Finches now live at 9661 Gemini Rd., Indianapolis, IN. On March 21, 2017, law enforcement observed a black 2017 Chevrolet Impala with Indiana license plate #FL598AAX parked in the driveway of 9661 Gemini Rd., Indianapolis, IN. According to Enterprise Rent-A-Car, Julius Finch rented a black 2017 Chevrolet Impala with Indiana plate FL598AAX on February 2, 2017. The rental was due back to Enterprise on March 23, 2017. Julius Finch provided the phone numbers 317-960-9757 and 317-923-3828 to Enterprise.

Hotel records also reveal that Finch checked into the Red Roof Inn 6360 S. 13th Street, Oak Creek, WI on March 8, 2017, and departed on March 11, 2017. Subpoenaed hotel records further reveal that Finch checked into the Comfort Suites Hotel, 10831 Park Place, Milwaukee, WI, on March 10, 2017, and departed on March 11, 2017. Finch provided the address of 4601 Guilford, Indianapolis, IN, 46205, and phone number 317-493-6157 (Jefferson's number) to the Comfort Suites Hotel. Finch paid for the room at Comfort Suites with a credit card, which was subsequently seized from Finch's property at the Regional Jail and Correctional Facility, South Central Regional Jail, 1001 Centre Way, Charleston, West Virginia, where Finch is in custody for the armed robbery of a pharmacy.

*Witness Identifications*: Case agents displayed photo arrays of Jefferson to victims of the above-described armed robberies of pharmacies. Jefferson was identified by the Walgreens manager as being one of the gunmen in the armed robbery of the Walgreens located at 4730 S. 27th Street, Milwaukee WI on March 8, 2017. Jefferson was also identified by the victim pharmacist as being the gunman in the armed robbery of the Walgreens located at N83 W15701, Appleton Avenue, Menomonee Falls, WI on March

10, 2017. The victim pharmacist from the Menomonee Falls robbery also positively identified a juvenile, D.R., as being the second armed robber.

Hollowell was identified by a Walgreens manager as participating in the casing of the Walgreens located at 3701 S. Howell Ave., Milwaukee, WI on March 8, 2017, prior to the armed robbery on March 10, 2017. Additionally, Jefferson's cellsite records reveal that his phone was registering off a cell tower located in close proximity to the Walgreens located on Howell Avenue at the time Hollowell was doing the casing of the Walgreens on Howell Avenue on March 8, 2017 at 12:47 p.m. Case agents also identified Hollowell in surveillance videos casing the Walgreens located at N83 W15701 Appleton Avenue, in Menomonee Falls, prior to the armed robbery occurring on March 10, 2017. Hollowell was also identified in surveillance videos casing the Walgreens located at 6442 North 76th Street, Milwaukee, WI, and the Walgreens located at 2625 West National Avenue, neither of which were actually robbed. Jefferson's cellsite records reveal that his phone was registering off a cell tower located in close proximity to the Walgreens located on National Avenue when Hollowell was identified as being inside the store doing a casing of that Walgreens. Additionally, Harvey and Hollowell were identified via surveillance video casing the Walgreens located at 3701 South Howell Avenue on March 9, 2017 approximately one hour before the armed robbery occurred at 1:10 a.m. on March 10, 2017. The surveillance video captures Hollowell and Harvey entering the Walgreens and Finch's Chevrolet Conversion van in the parking lot.

*Historical Cell Site and Telephone Toll Analysis*: Law enforcement obtained court orders authorizing disclosure of all of the cellular telephones registering off cell towers located in close proximity to the three victim Walgreens and the Motel 6 during specified times. The following numbers were identified as registering off of cell towers located in close proximity to the three victim Walgreens: 317-960-9757 (Finch), 317-493-6157 (Jefferson); 317-796-7785 (Harvey) and 512-202-1774 (Hollowell).

*Jefferson's Telephone Records*: Review of the call detail records for 317-960-9757, one of Finch's cell phones, reveals multiple contacts with 317-493-6157 between March 1 and March 7, the days leading up to the armed robberies in the Eastern District of Wisconsin. An Indianapolis Metropolitan Police report dated on October 9, 2016, listed the number of Devin G. Jefferson as 317-493-6157. This is the same number Finch provided to the Comfort Suites when he checked in to the hotel on March 10, 2017. Law enforcement also obtained a 2703(d) order, which revealed that 317-493-6157 connected with a cell tower located in close proximity to the Walgreens located at N83 W15701 Appleton Ave, Menomonee Falls, WI, shortly before the armed robbery occurred on March 10, 2017. Additionally, the historical cell site records for 317-493-6157 reveal that it traveled from Indianapolis to Milwaukee on March 7, 2017, and it traveled back to Indianapolis from Milwaukee on March 11, 2017.

***Jefferson's Post-Arrest Statement***: On December 20, 2017, case agents interviewed Jefferson. After being advised of his *Miranda* rights, and waiving them, Jefferson admitted to his own involvement in the armed robberies of the S. 27th Street and Menomonee Falls Walgreens stores, and identified Harvey, Finch, and Hollowell as his co-actors. Jefferson identified Hollowell as casing both pharmacies prior to the robberies. Jefferson stated that Finch also cased the pharmacies prior to the robberies and was the getaway driver who drove the van.